TRADERS & GENERAL INS. CO. v.
CHILDERS.

No. 1552.

Court of Civil Appeals of Texas. Eastland.
May 8, 1936.

Rehearing Denied June 5, 1936.

Turner, Seaberry & Springer, of Eastland, and Lightfoot & Robertson, of Fort Worth, for appellant.

Stinson, Hair, Brooks & Duke, of Abilene, and Smith & Smith, of Anson, for appellee.

LESLIE, Chief Justice.

This is a workmen's compensation case. The appellee Raymond Childers perfected an appeal from an award of the Industrial

Accident Board and seeks to recover compensation for total and permanent disability. The Traders & General Insurance Company answered by exceptions and general denial only. The trial was before the court and jury, and upon the answers to special issues, judgment was rendered for appellee. The insurance company appeals. Where necessary to properly reflect the rulings of this court, the facts of the case will be stated.

■ Issue No. 1 was objected to as being duplicitous in that it inquired of the jury, first, whether the plaintiff sustained the injury alleged, and, second, whether he sustained it in the course of his employment. The question being answered in the affirmative, the first assignment raises that point. The issue is duplicitous. We are inclined to hold the error harmless on the theory that the evidence on one of the issues was undisputed. Texas Employers' Ins. Ass'n v. Coulter (Tex.Civ.App.) 35 S.W.(2d) 1082; Austin v. De George (Tex.Civ.App.) 55 S.W.(2d) 585. The appellant vigorously contends each issue is raised. If this were the only point in the case, we would be constrained to overrule it; but the question is a close one, and since the judgment must be reversed on other grounds, we suggest that the issue on another trial be submitted in a manner free from vice of duplicity, etc. It would possibly promote simplicity and accuracy in the trial to submit the issue without embodying in it any legal terms which must of necessity be defined or explained under the statute.

■ The second proposition is to the effect that the court erred in failing to define "partial incapacity" as used in special issue No. 6. That special issue was not answered because the court instructed the jury to answer the same only in the event they answered special issue No. 1 yes and special issue No. 2 no. Not having so answered said issues 1 and 2, the jury gave no answer to special issue No. 6. This conditional submission of issue No. 6 to the jury was not objected to by the appellant, and the contingency not arising in which the jury had a duty to answer it, we think the failure of the court to define the term, if error at all, was harmless. Ordinarily it would seem that the term should be defined.

The appellant's third proposition predicates error on the action of the trial court in overruling its objections to certain portions of the closing argument of appellee's attorney. The suit is based upon an alleged injury to the appellee's arm sustained in the course of his employment for John Yakimo. The pleadings set forth the manner in which the injury was sustained, and that its effect had extended into his hand, arm, and shoulder, and body generally. The pleadings in terms assert "that the nerves and muscles in the plaintiff's left hand, arm and shoulder and left portion of his back have become atrophied, shriveled and decaying * * *" and that "he is now suffering from a total and permanent disability to perform any kind of labor * * *."

The proceedings out of which the contention develops is reflected by the bill of exception, which in part is as follows: "During the trial the plaintiff (Childers) testified in person, during which time his entire left arm was covered with clothing. At no time during his testimony did the plaintiff offer in evidence as an exhibit the alleged injured arm, nor did the plaintiff offer to show and present to the jury the condition of the alleged injured left arm. Thereafter, while counsel for defendant was arguing the case to the jury he stated in effect that if plaintiff's injury was as serious and permanent as plaintiff claimed, that plaintiff should have showed his arm to the jury, that his arm would have been the best evidence of its present condition, and there must have been some reason why his attorneys did not have his arm shown to the jury. That thereafter counsel for plaintiff in his closing argument to the jury stated in substance that the reason plaintiff's arm was not shown to the jury was because the court would not have allowed such a procedure, that it could not be done and that the law did not allow them to show his arm to the jury, etc. Thereupon counsel for the plaintiff added: 'Gentlemen of the Jury: I apologize to you for Judge Seaberry, Counsel for defendant, for making this silly suggestion because he knows, or should know, that the law will not permit it.' To which argument of counsel, the defendant objected and requested the court to instruct the jury not to consider the same because the statement was prejudicial, inflammatory, a misstatement of the law and misleading to the jury, which objection and request were overruled in all things, and to which action of the court the defendant excepted, etc."

The bill was in part qualified by the trial judge as follows:

"Judge Seaberry was arguing the case for the defendant. He used the following language: 'Gentlemen: if this boy here had

been hurt like his attorneys claim he was and as bad as they claim, why would they not take his shirt off and exhibit that arm to you jurors and let you see it and examine it and determine for yourselves whether it was injured or not. That would have been the fairest way, then there would not have been any doubt in your minds.'

"The counsel for the plaintiff (Judge Smith) in answering the foregoing argument said: 'The reason we did not have him strip his shirt off and exhibit his injured arm to you was because the courts do not allow such procedure and if we had undertaken it Judge Seaberry would have been on his feet objecting and would have had a right to object, and I now apologize to you gentlemen on behalf of Judge Seaberry for making this silly suggestion to you because he knows that the rules of evidence will not permit such, and I assure you now that it was only put in for a smoke-screen to try to draw your minds away from the testimony in this case.' "

The trial court having overruled the defendant's objections to the above argument and criticism by plaintiff's attorney, that ruling is now presented as error under the proposition that the same was prejudicial, inflammatory, a misstatement of the law, and misleading to the jury.

A proper answer to the question raised involves a consideration of whether or not the argument of attorney Seaberry was legitimate. That is, was he warranted by the record and the law in making the observations and deductions which drew from appellee's counsel the statement and criticism complained of?

█ It has long been the established rule in this state that attorneys are allowed much latitude in arguing issues of fact before the jury, and this applies to inferences drawn both from evidence offered, or evidence not offered, if it reasonably appears it could have been produced and offered. Corn v. Crosby County Cattle Co. (Tex.Com.App.) 25 S.W.(2d) 290; Dallas Ry. & Terminal Co. v. Garner (Tex.Civ.App.) 42 S.W.(2d) 665, reversed on other grounds (Tex.Com. App.) 63 S.W.(2d) 542; Ford Motor Co. v. Whitt (Tex.Civ.App.) 81 S.W.(2d) 1032; Cook v. Carroll Land & Cattle Co. (Tex. Civ.App.) 39 S.W. 1006.

█ It is equally as well settled that where a fact is particularly within the knowledge of a party and he does not produce evidence of such fact, it is legitimate argument for the opposite party that it does not exist. Texas Elec. Ry. v. Gonzales (Tex.Civ.App.) 211 S.W. 347 (writ ref.); Reilly v. Buster (Tex.Civ.App.) 52 S.W. (2d) 521; Texas Ind. Ins. Co. v. Dean (Tex.Civ.App.) 77 S.W.(2d) 748; First Nat. Bank of Rockport v. Brown (Tex. Com.App.) 15 S.W.(2d) 563; Commercial Standard Ins. Co. v. Shudde (Tex.Civ.App.) 76 S.W.(2d) 561; Atex Const. Co. v. Farrow (Tex.Civ.App.) 71 S.W.(2d) 323; Gulf, C. & S. F. Ry. Co. v. Booth (Tex.Civ.App.) 97 S.W. 128; 17 Tex.Jur. 303, 304, § 86; 22 C.J. 123, § 58, p. 111. Further, there are numerous authorities holding that in the trial of a personal injury suit, it is proper to permit the plaintiff to exhibit his injuries to the jury. Texas Traction Co. v. Scoggins (Tex.Civ.App.) 175 S.W. 1128 (writ ref.); Chicago, R. I. & G. Ry. Co. v. De Bord, 62 Tex.Civ.App. 302, 132 S.W. 845; Id. (Tex.Civ.App.) 146 S.W. 667, writ ref. 109 Tex. 20, 192 S.W. 767; Missouri, K. & T. Ry. Co. v. Lynch, 40 Tex.Civ.App. 543, 90 S.W. 511, 513 (writ ref.); Missouri, K. & T. Ry. Co. v. Moody (Tex.Civ.App.) 79 S.W. 856, 857 (writ ref.); Texas Midland R. R. v. Brown (Tex.Civ.App.) 58 S.W. 44 (writ ref.). In such trial he is permitted to exhibit to the jury fragments of bone taken from his body as a result of his injury. St. Louis & S. F. Ry. Co. v. Mathis, 101 Tex. 342, 107 S.W. 530; Id. (Tex.Civ.App.) 110 S.W. 209. In Davis v. Christmas (Tex. Civ.App.) 248 S.W. 126, it was held that where the injury caused the plaintiff to lose an eye, it was proper to permit him to remove the artificial eye and exhibit an empty socket to the jury. 17 Tex.Jur. p. 468, § 178; 22 C.J. p. 788, § 899.

It has been held in this state that the refusal of a plaintiff in a personal injury case to submit to an examination by a disinterested physician may be brought before the jury to be considered by them in determining the credibility and sufficiency of the testimony upon which the plaintiff seeks to recover. Austin & N. W. Ry. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 64 L.R.A. 494, 104 Am.St.R. 863, 1 Ann.Cas. 261; Texas & N. O. Ry. Co. v. Rooks (Tex.Com.App.) 292 S.W. 536, affirming (Tex.Civ.App.) 283 S.W. 622, rehearing denied (Tex.Com.App.) 293 S.W. 554; Galveston, H. & S. A. Ry. Co. v. Hughes (Tex.Civ.App.) 91 S.W. 643; 24 Tex.Jur. p. 441, § 4.

If such matters may be brought before the jury for the purpose stated, undoubtedly it is permissible for an attorney to draw fair deductions from such testimony.

In the light of the foregoing well-established rules of law and under the record presented, it is clear that the argument of Attorney Seaberry was proper, and his deductions warranted. The plaintiff was seeking compensation for total permanent disability, and asserting that the muscles of his left arm, etc., had become atrophied, shriveled, etc. The burden was upon him to establish the injury and its extent. The defendant was challenging the existence of any such injury, as well as its seriousness. Under the law he could have exhibited the alleged injured arm and affected parts, and had he done so, it would have had a very direct bearing upon the extent, character, and permanency of the injury, if any. Not having done so, the deductions that the injury was not so serious, etc., as contended for by the plaintiff, was logical.

The authorities authorizing the argument of defendant's counsel necessarily disapprove, as unwarranted, the statements and criticisms made by the plaintiff's attorney in reference thereto. The bill of exception sets out the argument complained of and it need not be repeated here.

Obviously the argument contains misstatements of the law of procedure and rules of evidence in such cases. Doubtless the same were made in the excitement of the trial, and without the purpose of gaining an unfair advantage, but the objectionable argument was just as effective to put the counsel for defendant, or rather his client, in an embarrassing situation before the jury, and especially was this true since the trial court put his stamp of approval on same by overruling the defendant's objection to the argument.

■ The argument was prejudicial to defendant. The authorities uniformly hold that such prejudicial argument necessarily works a reversal of the judgment of the trial court. The opinion in Bell v. Blackwell (Tex.Com.App.) 283 S.W. 765, is in point. The question there considered involved the misstatement by an attorney of the law as applied to the facts in the case. That authority lays down the settled rule that a judgment will be reversed and a cause remanded unless it affirmatively appears from the record that the improper argument was harmless; or differently stated, a reversal should follow if there is any reasonable doubt of its harmless effect. There is nothing in the record before us indicating that the objectionable argument was harmless. 3 Tex.Jur. p. 1260, § 883, and numerous authorities citing and following the opinion in Bell v. Blackwell, supra.

The Supreme Court has often spoken upon the question before us, and the rule with reference to reversals in such cases is laid down in no uncertain terms. Woodard v. Texas & P. Ry. Co., 86 S.W.(2d) 38. In obedience to such authorities, we sustain the assignment under consideration.

The fourth and fifth propositions raise questions involving the amount of the judgment. One point is that the judgment included $3.82 interest on installments of compensation from the date of injury until the date of judgment, without pleadings therefor. The other point is that the judgment by correct calculation would be for a smaller sum than that decreed. Appellant and appellee agree that there is an error of $43.10 in this respect. These contentions involved elementary matters that should be observed upon another trial. For correct pleadings authorizing the recovery of interest in suits for injuries, see Bankers Lloyds v. Pollard (Tex.Civ.App.) 40 S.W.(2d) 859 (writ ref.); Standard Acc. Ins. Co. v. Stanaland (Tex.Civ.App.) 285 S.W. 878.

A reformation would cure the above matters, but the assignment of error sustained requires that the judgment of the trial court be reversed and the cause remanded, and it is so ordered.